IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

BAILEY INDUSTRIES, INC.,
      Plaintiff,

vs.                                    Case No. 3:10mc64/MCR/EMT

CLJP, INC.,
       Defendant.
_____/

**ORDER**

On August 18, 2010, Plaintiff Bailey Industries, Inc. ("Bailey") initiated an action in this district by filing a motion to compel documents responsive to a subpoena it issued to Defendant CLJP, Inc. ("CLJP") (Doc. 1). The subpoena was issued in connection with a lawsuit between Bailey and Legacy Cabinets, Inc. ("Legacy"), which lawsuit is pending in the United States District Court for the Northern District of Alabama (Case No. 2:09cv1574/VEH). Also before this court are other filings submitted by Bailey, CLJP, and Legacy, all of which relate to the motion to compel (*see* Docs. 8, 10–12, 14–15, 17–19, 22, 24). As set forth below, the court grants Bailey's motion.

BACKGROUND[1]

Legacy, as plaintiff in the underlying lawsuit, filed a complaint against Bailey alleging various claims—including breach of contract, action on open account, and unjust enrichment—based upon Bailey's alleged termination of certain distribution agreements relating to Legacy's products (including an agreement regarding Bailey's distribution of Legacy's cabinet products in New Orleans, Louisiana), as well as Bailey's alleged refusal to make payments for Legacy's products (*see, e.g.*, N.D. Ala. Case No. 2:09cv1574/VEH (doc. 1 at 7–16)). In relevant part, the New Orleans

---

[1] The dispute between Bailey and CLJP is explained in detail in the motion to compel (Doc. 1), CLJP's response thereto (Doc. 8), and Bailey's reply (Doc. 14). A detailed explanation need not be repeated here. Thus, this order contains only a brief outline of the relevant aspects of the dispute.

distributor agreement requires that Bailey refrain from distributing, marketing, or selling cabinets made by anyone other than Legacy in the "Sales Area," unless a cabinet product or style is not offered by Legacy and such sales do not exceed more than 10% of Bailey's overall cabinet sales in the "Sales Area" (which area is defined in the agreement as "New Orleans, Louisiana") (*see id.* at 9–10).[2] Bailey then filed counterclaims against Legacy,[3] including breach of contract and warranty, fraudulent misrepresentation and/or omission, promissory fraud and/or fraudulent inducement, tortuous interference, and conspiracy claims (*id.*, (doc. 19)). In support of its counterclaims, Bailey alleges in relevant part that it agreed to "take over" operation of the Legacy distribution center in New Orleans and in doing so relied on Legacy's representations as to the center's prior sales volumes under Legacy management and control, but Legacy's sales-volume representations were false (*id.*). Bailey further alleges that Legacy's products were of inferior quality or damaged and that Legacy failed to cure the product defects upon request, in violation of its contractual agreements (*id.*). Moreover, Bailey alleges, Legacy began filling orders directly to Bailey's customers, solicited customers in the New Orleans area, and licensed or empowered new distributors, such as CLJP,[4] to distribute Legacy products in the New Orleans sales areas, thereby competing directly against Bailey in that market in violation of its contractual agreements (*see id.*).

On or about June 24, 2010, Bailey issued to CLJP a subpoena from this court which commanded production of three categories of documents (*see* Doc. 1, Ex. A at 3). Two of the three categories are in dispute here and are as follows:

> — Any and all correspondence, including, but not limited to, written correspondence and e-mail correspondence with Legacy Cabinets, Inc. from March 1, 2008 to the present that address or relates, in any way, to Bailey Industries, Inc. or Legacy's contracts/dealings with Bailey Industries, Inc. [hereafter referred to as the "email request"]; and,

---

[2] The page references used in this Order reflect the page numbers as enumerated in this court's electronic docketing system (and the Northern District of Alabama's system) rather than those the parties may have assigned.

[3] Bailey also asserted claims against a third entity, which claims are not directly relevant to the instant dispute.

[4] CLJP is a distributor of Legacy products, and its registered agent is in Destin, Florida.

— Any and all documents including, but not limited to, invoices, purchase orders, billing statements, pertaining to purchases of cabinets from Legacy Cabinets, Debut Cabinetry and/or Alliant Cabinets Direct between March 1, 2008 and August 13, 2009 in the state of Louisiana [hereafter referred to as the "invoice request"].

(Doc. 1, Ex. A).

In initially responding to Bailey's email request, CLJP produced two emails; and in initially responding to Bailey's invoice request, CLJP produced approximately 115 pages of invoices. Bailey contends, in essence, that CJLP's response to the email request is incomplete (in part because additional emails—responsive to the email request and known by Bailey to exist—were not produced), and the response to the invoice request is inadequate because it provides no useful information to Bailey due to CLJP's extensive redaction of the invoices (*see, e.g.*, Doc. 1). In an effort to resolve the instant disputes, however, Bailey indicated to CLJP that issues related to the email request may be rendered moot if CLJP's information technology ("IT") expert provided an amended affidavit, explaining in greater detail the computer search he conducted when he first searched CLJP's computers for emails responsive to Bailey's request[5] (*see, e.g.*, Doc. 14 at 2). Although CLJP declined to provide an amended affidavit as Bailey suggested, the undersigned directed that CLJP do so, and an amended affidavit has now been filed with the court (*see* Docs. 16, 19, 22). Similarly, Bailey indicated to CLJP that issues related to the invoice request may be resolved if CLJP provided unredacted invoices (or invoices with far less redaction than those initially produced), and further, Bailey agreed to narrow the scope of the invoice request to require the production of information relating to sales in the New Orleans area only (instead of the entire state of Louisiana) (*see* Doc. 14 at 3, 7). CLJP then provided redacted spreadsheets, on which additional sales information was provided (*see, e.g.*, Doc. 12 at 4; Doc. 14 at 6–7), but Bailey

---

[5]    In its response to Bailey's Motion to Compel, CLJP attached an affidavit from its IT expert purporting to clarify the efforts he made to locate emails responsive to Bailey's email request and to substantiate the position taken by CLJP that a thorough computer search had been performed and that all responsive emails (i.e., two) had been produced (*see* Doc. 8). Thereafter, Bailey requested the amended affidavit referenced here.

maintains that the information remains of little or no use to Bailey due to the extent of the redaction on the spreadsheets.[6]

CLJP asserts that the invoices and spreadsheets have been redacted to preserve the confidentiality of CLJP's proprietary information, including its pricing structure (which, CLJP contends, is a "trade secret"), and CLJP further asserts that the release of such information to Bailey, "a fierce competitor" of CLJP, would be harmful to CLJP because Bailey could underbid CLJP if it learns of CLJP's pricing structure (Doc. 8 at 1–2).  With regard to the email request, CLJP asserts it has fully complied with Bailey's request because its IT expert has thoroughly searched the email system and produced all responsive emails he was able to locate (*id.* at 6).  Moreover, CLJP seeks an order requiring Bailey to pay certain costs associated with its production of documents responsive to Bailey's subpoena (Doc. 11).  Bailey opposes the order CLJP seeks regarding costs, noting that Bailey has yet to provide adequate responses to the subpoena (but adding that it will compensate CLJP once CLJP has complied with the subpoena) (*see* Doc. 14 at 10).

LEGAL STANDARDS

Rule 45(a) of the Federal Rules of Civil Procedure authorizes the issuance of a subpoena duces tecum seeking the production of documents (or other materials) from a nonparty, such as CLJP.  *See, e.g.*, Fisher v. Marubeni Cotton Corp., 526 F.2d 1338, 1341 (8th Cir. 1975) (subpoena duces tecum is only way to compel a nonparty to produce documents or other materials); Southeastern Mechanical Services, Inc. v. Brody, Case No. 1:09cv86/GET/SSC, 2009 WL 3095642, at *2 (N.D. Ga. June 22, 2009) (same, and noting that Rule 45, as revised in 2006, also provides for the production of electronically stored information ("ESI") by a nonparty).  The subpoena should "designate with reasonable particularity the documents, things, and [ESI] that are to be produced by the party upon whom it is served."  Wright & Miller, Federal Practice & Procedure: Civil 3d § 2457 (2008) (noting that cases discussing Fed. R. Civ. P. 34—which sets forth procedures for requesting documents from a party—provide helpful analogies regarding how specific the designation of documents must be).  Rule 45(c) provides means by which a person or nonparty subject to a subpoena may be protected.  Specifically, Rule 45(c)(2) and (3) provide in relevant part as follows:

---

[6]  In response to an order of this court, Bailey has provided representative samples of the redacted invoices and spreadsheets for the court's consideration (*see* Docs. 16–18).

(2) ***Command to Produce Materials or Permit Inspection***.

(A) *Appearance Not Required*. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections*. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) ***Quashing or Modifying a Subpoena***.

(A) *When Required*. On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

\* \* \*

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted*. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

\* \* \*

(C) *Specifying Conditions as an Alternative*. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

Fed. R. Civ. P. 45(c)(2), (3).

A subpoena may be quashed if it calls for "clearly irrelevant" matter, <u>Herron v. Blackford</u>, 264 F.2d 723, 725 (5th Cir. 1959),[7] but the court need not determine the admissibility of documents prior to trial or quash a subpoena demanding their production if there is any ground on which they might be relevant. Wright & Miller, Federal Practice & Procedure: Civil 3d § 2459 (2008). Courts construe relevancy "broadly to encompass any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." <u>Oppenheimer Fund, Inc. v. Sanders</u>, 437 U.S. 340, 351 (1978) (citing <u>Hickman v. Taylor</u>, 329 U.S. 495, 501 (1947)). *See also* <u>Wagner v. Viacost.com</u>, Case No. 06-81113-Civ, 2007 WL 1879914, at *1–2 (S.D. Fla. June 29, 2007) (applying relevance standard of Rule 26(b) to subpoena duces tecum seeking employment records from the plaintiff's current employer in deciding such records were not relevant in a FLSA case).

<u>DISCUSSION</u>

Bailey served its subpoena duces tecum on nonparty CLJP on or about June 24, 2010 (*see, e.g.*, Doc. 8). The subpoena directed compliance on or before July 9, 2010 (*see* Doc. 1, Ex. A). On July 2, 2010, CLJP "alerted Bailey that it was in the process of gathering the responsive documentation, that CLJP <u>might</u> redact confidential business information from some of the documentation, and that CLJP wanted to join [in] the . . . protective order entered into between Bailey and Legacy in the Alabama litigation" (Doc. 1 at 3 & Ex. B (email from CLJP's counsel reflecting same)) (emphasis added). On July 19, 2010, CLJP mailed its document production to Bailey, and the production was received by Bailey on July 24, 2010 (Doc. 1 at 3 & Ex. C). As noted *supra*, the production consisted of approximately 115 pages of redacted invoices and two emails, and the instant motion to compel concerns those productions, each of which will be discussed separately in this order, as follows.

<u>CLJP's Response to Bailey's Invoice Request</u>

Initially, the court notes that CLJP's response to the invoice request failed to comply with Rule 45 in several respects. First, any objection to producing the invoices must have been made in

---

[7] In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent decisions handed down by the former Fifth Circuit before October 1, 1981.

writing and served on Bailey on or before the date of compliance specified on the subpoena (that is, July 9, 2010).  *See* Fed. R. Civ. P. 45(c)(2)(B).  The indication by CLJP's counsel in an email on July 2, that he might need to redact "certain information if [his] client feels it is proprietary," but "[he's] not sure this will be necessary depending on what [his] clients give [him]" (*see* Doc. 1, Ex. B) is not a written <u>objection</u>; at most, it is an indication that an objection might be forthcoming. Second, the redacted invoices themselves, produced on or about July 19, 2010, cannot be construed as a "written objection" to Bailey's invoice request, as they state no objection and provide no explanation for the redactions.  Moreover, by July 19, the time for asserting an objection had passed.[8]  Thus, the undersigned concludes that any objection to Bailey's invoice request on the basis of "proprietary information" or "trade secret" is deemed waived by CLJP.  *Cf.* Fed. R. Civ. P. 33(b)(4) (stating that "[a]ny ground [for an objection to an interrogatory] not stated in a timely objection [i.e., thirty days] is waived unless the party's failure to object is excused by the court for good cause shown") (emphasis added).  Rule 34 contains a similar requirement that objections to requests for production be timely and stated with reasons, and the Advisory Committee Notes to the 1970 Amendment state that this subdivision "is essentially the same as that in Rule 33 . . . ."  Thus, as a general rule, when a party fails to timely object to interrogatories, production requests, or other discovery efforts, the objections are deemed waived.  *See* <u>In re United States</u>, 864 F.2d 1153, 1156 (5th Cir. 1989).  This is so even though a party had an objection to make.  *See* <u>Jaffe v. Grant</u>, 793 F.2d 1182, 1190 n.6 (11th Cir. 1986) (objection based on Fifth Amendment waived by failure to timely assert such privilege in response to discovery); <u>Peat, Marwick, Mitchell & Co. v. West</u>, 748 F.2d 540, 542 (10th Cir. 1984) (same as to work product).  Likewise, CLJP failed to avail itself of the procedures set forth in Rule 45(c)(3)(A), which specifically provide that a subpoena may be quashed, "on motion," if it calls for the disclosure of a trade secret or other confidential information. CLJP, however, has not filed a motion to quash the subpoena issued by Bailey.  Thus, because CLJP has waived any objection to Bailey's invoice request, Bailey's motion to compel responses to the invoice request is due to be granted on this basis alone.

---

[8]  Although an email from Bailey's counsel to CLJP's counsel, dated June 15, 2010, states that a two-week extension (to June 29) "for CLJP to respond to the subpoena is fine" (*see* Doc. 1, Ex. B), the extension was granted <u>after</u> the time for filing an objection had passed, and it appears the extension was granted during a time Bailey expected CLJP to fully comply with the subpoena.

Even if the court considers the merits of CLJP's objections to the invoice request, however, the court likewise finds that Bailey's motion is due to be granted. First, the information Bailey seeks is relevant to some of its counterclaims against Legacy in the underlying litigation (e.g., the claims that Bailey's competitors (such as CLJP) were making sales or soliciting Bailey's customers within the New Orleans sales area, Bailey's protected market, and/or were empowered or licensed by Legacy to make such sales, in violation of Legacy's representations or contractual agreements). Second, the redacted documents produced by CLJP are indeed of little or no use to Bailey. For example, the redacted invoices (produced by CLJP in its initial response) list only the type of product sold (e.g., "Dover Toast cabinets for kitchen and bathroom"), the method of delivery, invoice and order numbers, invoice and order dates, and the salesperson's identification number (*see* Doc. 18, Ex. B). The redacted invoices do not identify the location of the sale, so it is impossible to discern whether the sale occurred within the New Orleans sales area. And the invoices do not reflect the amount of the sale, so they provide no relevant information regarding Bailey's counterclaims for damages (*id.*). *See, e.g.,* Marshwood Co. v. Jamie Mills, Inc., 10 F.R.D. 590 (N.D. Ohio 1950) (where it appeared that plaintiff would have to present his full case including the evidence on damages, at one hearing, plaintiff was entitled to have records requested in subpoena so as to present an intelligent and accurate picture of its damages). Similarly, the spreadsheet (produced by CLJP in its supplemental response) is not helpful in its redacted form. The spreadsheet reflects only an inventory number, inventory date, the New Orleans area to which the inventory was shipped, and the total amount of sales (that is, $176,265.15) (*see* Doc. 18, Ex. A). Thus, it is impossible to determine the type of products CLJP sold (and correspondingly, whether the sales of those products violate Bailey's distributor agreement or otherwise support Bailey's claims against Legacy, such as its fraudulent misrepresentation claim) or the amounts of each individual sale.[9] In

---

[9] Counsel for Bailey asserts that the spreadsheet "lumps" together all Louisiana sales, making it impossible to discern which sales occurred within the protected market area of New Orleans (*see* Doc. 14 at 4). The court notes, however, that the spreadsheet reflects sales in Harvey, Metairie, and Saint Bernard, Louisiana (in addition to New Orleans), which areas are all in the vicinity of New Orleans (the court, however, does not and need not determine if these areas are part of the New Orleans "sales area," as that term is defined in the distributor agreement). The court makes this observation only to point out that the spreadsheet is responsive to Bailey's narrowed invoice request, insofar as it appears to reflect sales in the New Orleans area, as opposed to the entire

sum, based on this court's review of (a representative sample of) the documents produced by CLJP, the court is convinced that CLJP's response to the invoice request is inadequate.

The court also finds that any claim by CLJP that the invoices cannot be produced (other than in the form previously produced) without revealing "proprietary information," "confidential information," or "trade secrets" is unpersuasive. Bailey does not seek to discover the names of CLJP's customers, so there is no danger of Bailey soliciting CLJP's clients. Moreover, a monetary figure reflecting the total of a particular sale simply does not reveal CLJP's underlying pricing structure, and a "lump sum" figure of all sales in Harvey, Metairie, Saint Bernard, and New Orleans, Louisiana—while helpful—does not establish Bailey's damages. Indeed, such a figure may overstate Bailey's damages if some of the sales are deemed to have occurred outside the New Orleans sales area or otherwise deemed to have been non-violative of Legacy's representations or contractual agreements. Finally, a protective agreement is in place (or easily could be in place) to alleviate any concern that Bailey may learn of CLJP's pricing structure or other alleged confidential information (*see, e.g.*, Doc. 1 at 4–5 & Exs. C, D, F, G).[10] *See* Dean v. Anderson, Case No. 01-2599-JAR, 2002 WL 1377729, at *2 (D. Kan. June 6, 2002) ("it is well settled that confidentiality does not act as a bar to discovery and is generally not grounds to withhold documents from discovery"); Mackey v. IBP, Inc., 167 F.R.D. 186, 196 (D. Kan. 1996) (confidentiality concerns in many cases may be addressed with an appropriate protective order).

Thus, in conclusion, CLJP has waived any objection to that part of Bailey's subpoena duces tecum seeking sales documents "pertaining to purchases of cabinets from Legacy Cabinets, Debut

---

state of Louisiana.

[10] It is not evident that an amended protective order or confidentiality agreement is actually in place. The undersigned notes, however, that a Protective Order was entered in the underlying case (*see* Case No. 2:09cv1574/VEH (docs. 29, 30)), and CLJP expressed to Bailey its desire to join in the same confidentiality agreement that underlies that order and/or the order itself (*see* Doc. 1, Ex. B). Thereafter, on July 19, 2010, Bailey's counsel provided to CLJP a proposed protective order, after which CLJP provided its initial response to Bailey's invoice request (*see* Doc. 1 at 3 & Ex. C). To the extent the agreement was not signed or a protective order was not entered, the court notes that counsel for Bailey agreed that CLJP's sales data would be "for attorneys' eyes only" until a protective order or agreement was executed, and the court sees no reason why such an order or agreement could not easily be in place (if none is now) (*see* Doc. 14 at 6–7 & Doc. 1, Ex. C).

Cabinetry and/or Alliant Cabinets Direct between March 1, 2008 and August 13, 2009" in the New Orleans area.  Moreover, even if the merits of CLJP's untimely objections are considered, Bailey's motion is nevertheless due to be granted.   Accordingly, Bailey's motion to compel shall be **GRANTED** with regard to its invoice request.  Specifically, CLJP shall be required to provide an amended response to the invoice request as outlined at the conclusion of this order.

<u>CLJP's Response to Bailey's Email Request</u>

The email dispute may be characterized quite simply:  CLJP contends it has fully responded to Bailey's email request, but Bailey maintains that CLJP's response is inadequate.  The events preceding the current positions of the parties, however, are not so simple.  Therefore, a brief time line of the relevant events is helpful to understanding and resolving the email dispute; it is as follows (dates are approximate):

| | |
|---|---|
| June 24, 2010 | Bailey's subpoena served on CLJP. |
| July 19, 2010 | CLJP mailed its response to Bailey. |
| July 26, 2010 | Bailey received CLJP's response (which consisted of two emails). |
| July 26, 2010 | Bailey contacted CLJP and voiced objections to the email production, noting in relevant part Bailey's strong belief that additional responsive emails existed (which belief was based on discovery Bailey received from Legacy in the underlying lawsuit, as well as deposition testimony); Bailey asked that CLJP "double check its search parameters" to confirm that a meaningful computer search was conducted (*see* Doc. 1 at 4 & Ex. D). |
| July 27, 2010 | Bailey provided to CLJP a sample email it had received from Legacy, which was responsive to the subpoena but not produced by CLJP; Bailey also suggested that a computer search using the following search terms would likely reveal the existence of additional responsive emails:  Bailey, Alliant, Pensacola, Rodney Suggs, Mike O'Riley, Jon Reddell, Carlos Ansoategui, and Mobile (Doc. 1 at 4 & Ex. E).  Further, Bailey indicated that the computer search should concern the time frame of January 2008 through September 2009 (Doc. 1, Ex. E).[11] |

---

[11]   The court notes here that the subpoena established a slightly different time frame, that is, from March 1, 2008, "to the present" (*see* Doc. 1, Ex. A at 3).

August 6, 2010    CLJP stated it would participate in no further discovery until the "Clawback Agreement" was signed and/or a Protective Agreement was in place (*see* Doc. 1 at 4 & Ex. F). CLJP also requested that Bailey provide a copy of all emails already in its possession (referring to those produced by Legacy in discovery in the underlying lawsuit), "which you [Bailey] believe are responsive to [the] subpoena so that I [CLJP's counsel] can perform an accurate review of the system," and CLJP suggested that until it received those emails nothing else would be done with regard to the subpoena (*see* Doc. 1, Ex. F).

August 10, 2010    Bailey advised CLJP that an agreement already existed to protect CLJP's confidentiality concerns (and Bailey provided to CLJP another such agreement) and, therefore, CLJP's position that it would no longer participate in discovery was without merit (*see* Doc. 1 at 4–5 & Ex. G). Bailey also indicated that it had no obligation to provide to CLJP emails it previously received from Legacy (*id.*).

August 17, 2010    CLJP advised Bailey that it had "requested, in good faith, any and all correspondence which you [Bailey] allege supports your position that additional emails exist" (Doc. 1, Ex. H). CLJP also stated it had performed an "in-house" search of its computer system and found "no additional emails which it believes comply, [and] no further expense will be undertaken to hire an outside IT retrieval expert" (*id.*). Lastly, CLJP advised Bailey that "until [it] fully complies with CLJP's requests, CLJP will take no further action to attempt to comply with the underlying subpoena which CLJP considers satisfied at this time" (*id.*).

August 18, 2010    Bailey filed the instant motion to compel.

August 23, 2010    This court issued orders directing the parties to meet and confer in a good-faith effort to resolve the dispute (Docs. 3, 4).

August 26, 2010    CLJP filed a response to the motion to compel, noting the dispute had not been resolved (Doc. 8). Additionally, to demonstrate that a thorough email search had been conducted, CLJP attached to its response an affidavit from Brian Keith Schultz, its IT expert, dated August 26, 2010 (*see* Doc. 8, Attach.). CLJP asserted that any further search would entail "an expensive ($5,000.00) forensic analysis of the CLJP computer system which would have a dubious likelihood of success," and that as a nonparty CLJP should not have to go to such lengths to respond to Bailey's subpoena (*see* Doc. 8 at 7).

August 31, 2010     Bailey filed a reply to CLJP's response (Doc. 14). In relevant part Bailey suggested (as it had previously suggested to CLJP) that an amended affidavit from Mr. Schultz may establish that a thorough computer search had indeed been conducted (*see* Doc. 14 at 7–9).

September 9, 2010     This court ordered that CLJP provide an amended affidavit from Mr. Schultz and identified information that must be included in the amended affidavit (*see* Doc. 16).

September 15, 2010     CLJP filed an amended affidavit from Mr. Schultz, which is dated September 15, 2010 (Docs. 19, 22).

September 16, 2010     This court ordered Bailey to advise whether the amended affidavit satisfied its concerns regarding the computer search (Doc. 23).

September 21, 2010     Bailey filed a notice indicating that it remained unsatisfied (*see* Doc. 24).

As can be seen from the foregoing, and as mentioned *supra*, the question before the court is quite simple: Did CLJP properly respond to Bailey's subpoena by producing documents responsive to Bailey's command (that is, "Any and all correspondence, including, but not limited to, written correspondence and e-mail correspondence with Legacy Cabinets, Inc. from March 1, 2008 to the present that address or relates, in any way, to Bailey Industries, Inc. or Legacy's contracts/dealings with Bailey Industries, Inc.")? But answering the question is not so simple.

It was the expectation of the court that Mr. Schultz's amended affidavit would clarify the precise nature of the computer search he performed, and correspondingly, would permit the court to ascertain whether any additional search(es) would be fruitful or non-fruitful and unnecessarily burdensome. Even after reviewing two affidavits from Mr. Schultz, however, the court concludes that the precise nature of the search he performed remains unclear. Moreover, the time line of events and certain actions by CLJP suggest to this court an effort by CLJP to "hide the ball" or otherwise fail to properly respond to the subpoena without substantial justification. Therefore, it is logical to draw the conclusion that additional responsive documents exist and were not produced by CLJP. In drawing this conclusion the court has considered, among other factors, the following four factors.

First, to the extent CLJP refused to disclose any documents or otherwise participate in discovery due to the lack of a confidentiality agreement, it is evident that an agreement was readily available to CLJP, but CLJP failed to execute it. Moreover, CLJP has not objected to the email

request based on any confidentiality concerns, so even if its refusal (that is, its refusal to respond to Bailey's subpoena without a confidentiality agreement in place) was justified, the refusal should have extended only to Bailey's invoice request, not the email request. Second, the court is quite troubled by CLJP's failure to cooperate further unless or until Bailey provided all emails it had already received from Legacy (and which Bailey deemed responsive to the subpoena). Bailey had no obligation to do so. While CLJP suggests it needed those emails as "proof" that additional, responsive emails existed, the court sees the request as a possible effort by CLJP to thwart the subpoena by producing only those emails already in Bailey's possession. Third, it is evident that CLJP's response is incomplete, as Bailey has demonstrated to this court and to CLJP that more than two responsive emails exist. Moreover, Bailey's request concerns a time period of greater than two years and calls for "all correspondence," that concerns Bailey or Legacy's dealings with Bailey, including emails and written correspondence. Thus, even without Bailey's demonstration, it is reasonable to believe that additional correspondence between CLJP and Legacy (regarding Bailey) was created (and should still exist), since CLJP was selling Legacy products in the New Orleans area during the relevant time (as evidenced by the invoices and spreadsheets), and Legacy knew the area was Bailey's sales area.[12] Fourth, the search conducted by CLJP did not include obviously relevant search terms, such as the term "Alliant" (*see* Doc. 1, Ex. A; Doc. 22 at 2 ¶ 6).

Thus, sufficient reason exists to believe that CLJP's response is incomplete. *Cf.* Gray v. Faulkner, 148 F.R.D. 220, 223 (N.D. Ind. 1992) ("The fact that a party may disbelieve or disagree with a response to a discovery request . . . is not a recognized ground for compelling discovery, absent some indication beyond mere suspicion that the response is incomplete or incorrect."). *See also* A. Farber and Partners, Inc. v. Garber, 234 F.R.D. 186, 189 (C.D. Cal. 2006) (an earmark of a recipient's inadequate inquiry is the obvious absence of documents and other written materials that the recipient reasonably would be expected to have retained in the ordinary course of its business); In re Equitable Plan Co., 185 F. Supp. 57, 59 (S.D.N.Y. 1960) ("There is a rebuttable presumption that a bank or other corporation is in possession and control of its own books and records.").

---

[12] The court does not suggest that such correspondence will necessarily evidence any wrongdoing by Legacy and/or CLJP. For example, the correspondence might simply explain the terms of Bailey's New Orleans distributor agreement. The point is that such correspondence likely exists, and if so, it is responsive to the subpoena and should have been produced.

Moreover, when it reasonably appears that a response is incomplete the court may require—as this court has—certification that the nonparty has "conducted a search for the information reasonably available to them through their agents, attorneys, or others subject to their control and has[ ] determined that the information requested either does not exist or that it has been produced." <u>Gray</u>, 148 F.R.D. at 224. Because the certification here (that is, the affidavit and amended affidavit of Mr. Schultz) does not permit a determination that the requested information requested either does not exist or has been produced, the court shall require that CLJP conduct additional searches. Accordingly, Bailey's motion to compel shall be **GRANTED** with regard to its email request to the extent outlined at the conclusion of this order.

<u>FEES ASSOCIATED WITH THE MOTION TO COMPEL and COSTS INCURRED BY CLJP IN RESPONDING TO THE SUBPOENA</u>

<u>Fees</u>

Rule 45 contains only two provisions that allow for the imposition of expenses or sanctions, and neither is applicable here. First, Rule 45(c)(1) provides that the court must impose sanctions, "which may include lost earnings and reasonable attorney's fees—on a party or attorney" who fails to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Second, Rule 45(e) provides in relevant part that the issuing court "may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena." Here, as to the first provision, the court concludes that Bailey did not impose an undue burden or expense on CLJP, such that an award of sanctions is warranted. Bailey's subpoena was not overly-broad; it called for the production of correspondence and ESI that would have reasonably been expected to have been retained by CLJP in the ordinary course of business and reasonably expected to have been retrievable without imposing an undue burden on CLJP; and it concerned a limited time frame and subject matter, both of which are relevant to Bailey's counterclaims in the underlying lawsuit. Thus, CLJP is not entitled to an award of lost earnings or attorney's fees, such as those sought in its motion for costs (*see* Doc. 11 & Attachs.).[13] As to the second provision, the court finds

---

[13] Indeed, many of CLJP's expenses, including its attorney's fees, could have been avoided or minimized had CLJP fully complied with Bailey's subpoena or accepted any of Bailey's offers to resolve the disputed issues, which offers the undersigned deems reasonable, appropriate, and fair.

that CLJP "obeyed" Bailey's subpoena even though its responses were incomplete. Thus, because CLJP did not fail to respond to the subpoena "without adequate excuse," no basis exists for imposing sanctions against CLJP under Rule 45(e).

Although Rule 45(c)(2)(B)(i) authorizes the serving party to "move the issuing court for an order compelling production or inspection," there is no provision in Rule 45 for an award of expenses for bringing such a motion. Such a provision can be found in Rule 37(a)(5)(A), which authorizes an award of "the movant's reasonable expenses incurred in making the motion [to compel], including attorney's fees," but Rule 37(a) does not appear to govern motions to compel production of documents made pursuant to Rule 45. *See, e.g.*, Kona Spring Water Distrib., Ltd. v. World Triathlon Corp., Case No. 8:05cv119-T-23TBM, 2006 WL 905517, at *2 (M.D. Fla. Apr. 7, 2006) (court granted in part and denied in part motion to compel compliance with subpoena under Rule 45 and denied motion for sanctions, finding "to the extent that Defendant seeks sanctions under Rule 37, . . . the rule [is] inapposite") (citing Davis v. Speechworks Int'l, Inc., Case No. 03cv533S(F), 2005 WL 1206894, at *5 (W.D.N.Y. May 20, 2005));[14] *see also* Peacock v. Merrill, Case No. 08-01-B-M2, 2008 WL 687195, at *4 (M.D. La. Mar.10, 2008) ("The Court also finds that Peacock's request for court costs and attorney's fees in connection with this motion should be denied, as Fed. R. Civ. P. 45, dealing with the issuance and response to subpoenas directed to non-parties, does not provide for court costs and attorney's fees as a sanction against persons who fail to produce the subpoenaed documents."); NLRB v. Midwest Heating and Air Conditioning, Inc., 528 F. Supp. 2d 1172, 1181 (D. Kan. 2007) ("Unlike Rule 37, Rule 45 contains no express provision for attorneys' fees or sanctions to a party that has prevailed on a motion to compel compliance with a subpoena duces tecum."); SEC v. Kimmes, Case No. M18-304, 1996 WL 734892, at *7 (S.D.N.Y. Dec. 24, 1996) ("As for the applicability of Rule 37(a)(4) to motions to compel compliance with a subpoena duces tecum issued pursuant to Rule 45, this Court's research reveals that both case law and commentary regarding this issue are scarce. Nevertheless, the authority that does exist suggests

---

[14] In Davis, the court wrote "The court has no authority to sanction Mr. Weiss under Rule 37, as that Rule does not apply to a motion to compel compliance with a subpoena pursuant to Fed. R. Civ. P. 45." Davis, 2005 WL 1206894, at *5 (citing Kimmes, 1996 WL 734892).

that Rule 37(a)(4) is inapplicable to motions to compel under Rule 45.").[15]  Thus, based on the foregoing authority, the undersigned declines to award attorney's fees or costs incurred by Bailey in bringing the motion to compel, even though Bailey has prevailed on the motion.

Costs

As Bailey has acknowledged (at least with regard to CLJP's response to the invoice request (*see, e.g.*, Doc. 14 at 10 (agreeing to pay costs once responsive documentation is received)), CLJP is entitled to certain costs of production.  The parties, however, cannot agree on something as simple as reasonable copying costs (Bailey asserts a reasonable amount is $.25/per page, and CLJP asserts a reasonable amount is $.75/per page); thus, the court will set the amount at $.50/per page.  The court finds, however, that Bailey shall not be required to pay to CLJP copying costs for previously-produced documentation (regarding Bailey's invoice request), as it is non-responsive to the subpoena.  Bailey will, however, be required to pay for copying costs associated with CLJP's amended response.

With regard to the email request, Bailey will be required to advance to CLJP reasonable costs for additional computer searches to be conducted by CLJP, as ordered below.  *See* United States v. International Business Machines, 62 F.R.D. 507, 509 (S.D.N.Y. 1974) ("The advancement of costs as a condition for the denial of a motion to quash is committed to the sound discretion of the court.") (citation omitted).  Likewise, although the prior computer search produced only two emails, it nevertheless was conducted only because Bailey commanded that it be conducted, and while the search was not as thorough as it should have been, CLJP is nevertheless entitled to reasonable expenses incurred in conducting the previous search.  CLJP is cautioned, however, that:

> The costs sought by the non-party may be unreasonable if they are disproportionate to the demands made; if other persons, similarly situated, would incur lesser costs to comply; or proof that a non-moving party and non-party are in collusion to artificially inflate the costs of compliance so as to make the price of litigating the case prohibitive.  These examples are illustrative and not intended to be all-inclusive.

Cantaline v. Raymark Industries, Inc., 103 F.R.D. 447, 450 n.4 (S.D. Fla. 1984).[16]

---

[15]  The provisions of former Rule 37(a)(4) are currently found in 37(a)(5).

[16]  The parties are forewarned that if they fail to agree on a "reasonable" amount of costs, and the dispute is brought to this court for resolution, the matter will likely be set for a hearing at a time convenient to the court (which may—due to the undersigned's full schedule—be in the evening or

Accordingly, it is **ORDERED**:

1.      Bailey's Motion to Compel (Doc. 1) is **GRANTED**, with regard to its invoice request, to the following extent.  On or before **OCTOBER 6, 2010**, CLJP shall provide an amended response to Bailey's invoice request, and the amended response must:

(a)      consist of a reproduction of the spreadsheets, and the spreadsheets shall—in addition to the information contained on the spreadsheets originally produced—include (i) a description of the item sold (the description may be provided by identifying the Legacy product that corresponds to the inventory number on the spreadsheets, or the description may be provided in the spreadsheet column titled "comment"), and (ii) the invoice totals. **OR**

(b)      consist of a reproduction of the invoices, and the invoices shall—in addition to the information contained on the invoices originally produced—include (i) the city to where the product was shipped, and (ii) the invoice total.

2.      Bailey's Motion to Compel (Doc. 1) is **GRANTED**, with regard to its email request, to the following extent.  On or before **OCTOBER 6, 2010**—*IF* Baily confirms to CLJP that it is desirous of each of the following directives *AND* Bailey complies with Part 4.(b) of this order, *infra*—Mr. Schultz (or another IT expert of CLJP's choosing) shall:

(a)      conduct an additional search of "all e-mail folders," the "mailboxes of all users," and "all available mailboxes" (*see* Doc. 22 at 1) using the following search terms: Alliant, Suggs, Mike O'Riley, Jon Reddell, Carlos Ansoategui, and Mobile;[17]

---

on a Saturday).  After such hearing, one or both of the parties will pay the costs associated with the hearing, including but not limited to court reporter costs and, potentially, costs for the opposing party's travel and lodging.  Alternatively, at the court's discretion, the matter may be referred to a mediator; the mediation will be court-ordered to occur immediately; the court will select the mediator; and the parties will pay for the mediation.  Thus, as can be seen, any failure to reach an agreement on the matter of costs will serve only to increase the amount of costs paid by one or both of the parties.

[17]  Although the folders and mailboxes were already searched (*see* Doc. 22 at 1 ¶ 5), it is not evident that a thorough search was conducted (*compare* Doc. 1, Ex. E (suggested search terms including Bailey, Alliant, Pensacola, Rodney Suggs, Mike O'Riley, Jon Reddell, Carlos Ansoategui, and Mobile)  *with* Doc. 22 at 2 ¶ 6 (search terms actually used: Rodney, Carlos, Pensacola, and Bailey)).

(b)     conduct a search of the Tallahassee laptop computer using the following search terms:  Bailey, Alliant, Pensacola, Rodney Suggs, Mike O'Riley, Jon Reddell, Carlos Ansoategui, and Mobile;[18] and,

(c)     conduct a search of any CLJP desktop computer that was not previously searched using all of the following search terms:  Bailey, Alliant, Pensacola, Rodney Suggs, Mike O'Riley, Jon Reddell, Carlos Ansoategui, and Mobile (unless such a search would duplicate the search described in part 2.(a), *supra*).

3.     Following the additional computer searches, but no later than **OCTOBER 8, 2010**, CLJP shall provide to Bailey an amended response to the email request.  The amended response shall include any additional documentation located as a result of the additional searches, and if no such documentation is located, a statement confirming that search(es) compliant with this court's order were conducted.

4.     CLJP's Motion to Require Payment of Copy Costs (Doc. 11)  is **GRANTED** to the following extent:

(a)     On or before **OCTOBER 8, 2010**, Bailey shall submit payment to CLJP, in the amount of $.50/per page, for each page produced by CLJP in its amended response to Bailey's invoice request.

(b)     On or before **OCTOBER 5, 2010**, Bailey shall pay reasonable costs associated with CLJP's previous and future computer searches.

5.     Bailey's Motion to Strike (Doc. 15) is **DENIED**.

**DONE AND ORDERED** this 30th day of September 2010.

---

[18]   Mr. Schultz states in the amended affidavit that all laptops (except one in Tallahassee) have been replaced within the last twelve months (or since approximately August or September of 2009), apparently as an explanation for CLJP's failure to previously search those laptops.  Bailey's subpoena (issued and served in June 2010), however, calls for production of all correspondence (including emails) from March 1, 2008 "to the present."  Notwithstanding, Bailey indicated to CLJP that the relevant time frame is January 2008 through September 2009 (*see* Doc. 1, Ex. E).  Thus, the replacement laptops are unlikely to contain relevant emails.  However, even though most of CLJP's laptops were replaced in August or September 2009, the court notes that businesses customarily transfer or archive information from laptops that are to be replaced <u>prior to</u> disposing of the laptops (or, as in this case (apparently), prior to donating them to charity (*see* Doc. 24, Ex. A)).  If CLJP did so, the archived or transferred information shall also be searched by CLJP's IT expert, <u>wherever that information is stored</u>, using the following search terms:  Bailey, Alliant, Pensacola, Rodney Suggs, Mike O'Riley, Jon Reddell, Carlos Ansoategui, and Mobile (unless such a search would duplicate any of the other searches ordered by this court).

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**